UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRENT ELECTRIC CO., INC.,**<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 584,**<br><br>Defendant/Counter-Plaintiff. | 4:21-cv-00246-CRK-CDL |

## OPINION AND ORDER

In this case, the parties—an employer and a labor organization—failed to conclude a new collective bargaining agreement, and the labor organization submitted the dispute to arbitration, which issued an award imposing a new collective bargaining agreement ("2021 CBA") on the parties. The employer objects to the terms of that new agreement and brings this action to vacate the arbitration award. The labor organization counterclaims to enforce the arbitration award. Before the Court is defendant/counter-plaintiff International Brotherhood of Electrical Workers Local Union 584's ("the Union") motion to dismiss the first amended complaint. See ECF No. 18 ("Def. Br."); ECF No. 10 ("FAC"). The Union argues the plaintiff/counter-defendant Brent Electric Company, Inc.'s ("Brent Electric") complaint fails to state a claim upon which relief can be granted and thus

4:21-cv-00246-CRK-CDL

the Court should dismiss the complaint.[1]  Def. Br. at 1; see also Def.'s Reply to Pl.'s Resp. Opp. [Def. Br.] at 10, ECF No. 24 ("Def. Reply").

## BACKGROUND[2]

Brent Electric is an Oklahoma corporation providing electrical service and is an employer affecting commerce under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2022) ("LMRA").  FAC ¶ 2.  The Union is a labor organization under the LMRA.  Id. ¶ 3.  Brent Electric signed an agreement in 1996 authorizing the National Electrical Contractors Association ("NECA") to represent it in collective bargaining with the Union and agreeing to be bound to agreements between NECA and the Union.  Id. ¶¶ 6–8.  A series of collective bargaining agreements subsequently bound Brent Electric, including an agreement effective from June 1, 2018, to May 31, 2021 ("2018 CBA").  Id. ¶¶ 9–11.  Brent Electric terminated its agreement with NECA to act on its behalf on September 18, 2020, and

---

[1] The Union also requests the Court, in the alternative, dismiss duplicative and/or claim-splitting allegations identical or like those Brent Electric asserts in another case pending before this Court, Case No. 21-cv-00103.  Def. Br. at 1.  In that case, Brent Electric provided notice to the Union and the National Electrical Contractors Association ("NECA") that it was terminating participation in the Union pension fund under the Memorandum of Understanding ("MOU") located in Addendum Four of the 2018 CBA.  FAC ¶¶ 17–22.  In response, the Union submitted a grievance to the Labor Management Committee under the 2018 CBA, claiming Brent Electric violated the MOU.  Id. ¶ 23.  Brent Electric lost the grievance, and the Union filed a complaint to enforce the grievance decision in Case No. 21-CV-00103, in which Brent Electric has counterclaimed.  Id. ¶¶ 24–26. Because the Court determines Brent Electric fails to state a claim to vacate the arbitration award, the Court need not address the Union's alternative argument.

[2] The Court includes facts from the first amended complaint and assumes them to be true for the purpose of this Opinion and Order.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); FAC.

informed the Union it intended to terminate the 2018 CBA, prior to the deadlines for notice of termination in the representation agreement with NECA and in the 2018 CBA. Id. ¶¶ 12–15.

Brent Electric informed the Union it intended to negotiate the terms of a new CBA and addressed provisions from the 2018 CBA it called "permissive subjects of bargaining." Id. ¶¶ 27–30. Brent Electric argued that federal law does not require parties to negotiate permissive subjects of bargaining. Id. ¶ 30. The Union informed Brent Electric on April 9, 2021, it would submit the unresolved issues between the parties to the Council on Industrial Relations ("CIR") for its consideration under the terms of the 2018 CBA. Id. ¶ 31. Brent Electric informed the CIR it objected to the Union's unilateral submission and attached a brief arguing against inclusion of the permissive subjects of bargaining in the new CBA. Id. ¶¶ 32–34. The CIR issued a preliminary decision and forwarded it to Brent Electric on May 27, 2021. Id. ¶ 35. The preliminary decision included a list of matters under dispute. Id. ¶ 36. Brent Electric objected to what it called errors and omissions in the CIR's preliminary decision on May 30, 2021, and the CIR issued a second decision on June 4, 2021, including provisions Brent Electric considers to be permissive subjects of bargaining. Id. ¶¶ 37–40. Brent Electric received the CIR's final award on June 28, 2021, which was identical to CIR's second decision. Id. ¶¶ 41–43.

The final award contained, and Brent Electric objects to, the following clauses:

> Section 1.02(c) is an evergreen clause as it mandates that the terms of the collective bargaining agreement will remain in effect at last [sic] 10 days after the expiration of the Agreement. . . .

Section 1.02(c) and 1.09 . . . [t]he evergreen provision in combination with the status quo provision mandate that the Imposed Agreement remain in effect past the term of the Imposed Agreement until: (1) the Union agrees to a proposed contract change; (2) the Union and Brent Electric jointly and voluntarily agree to interest arbitration before CIR to resolve outstanding issues; or (3) either party provides a subsequent ten (10) day notice to terminate the agreement, an act that either party allegedly can take to forestall termination of the collective bargaining agreement. . . .

Section 1.03 . . . is an international union approval provision . . . .

Section 2.01 . . . is an employer qualifications provision which permits the Union to determine the status of Brent Electric for that purpose. . . .

Section 2.05(a)–(c) . . . deals with surety bonds . . . .

Section 2.06(b) . . . requires a joint negotiating committee and requires that the committee be comprised of four individuals per party. . . .

Section 2.07 . . . addresses Non-Resident Employees (Portability) . . . .

Section 2.11 . . . involve[s] discipline of the Union's members – Internal Union Discipline of Members. . . .

Section 2.12 . . . covers the appointment of stewards . . . and deals with the relationship between the Union and who it chooses to act as its agent . . . .

Section 3.05(b) references at subsection 6 to "LMCC" and subsection 7 "NLMCC" . . . each deal with industry promotion fund issues . . . .

Section 3.08 . . . deals with an Advertising Fund . . . .

Section 3.09 . . . addresses a political action committee ("PAC") fund . . . .

Section 3.10 . . . deals with the employer deduction from employee payroll checks of Advertising Fund and PAC fund obligations . . . .

Section 6.01 (second and fourth paragraphs) . . . indicates that Brent Electric will be bound to a National Electrical Benefit Fund trust agreement which . . . contains penalty clauses. . . .

4:21-cv-00246-CRK-CDL

> Section 6.02 (first sentence) . . . indicates that Brent Electric will be bound to a health insurance trust agreement which . . . contains penalty clauses. . . .
>
> Section 6.03 (including 3.05, number 6 and 6.05 (c)) . . . deal with the Local Pension Plan. . . .
>
> Sections 6.03 and 6.04 (a) (first sentence in each) . . . indicate that Brent Electric will be bound to Local Pension and Profit-Sharing Plan trust agreements which . . . contain penalty clauses . . . .
>
> Section 6.05(c) . . . contains a reference to the "LMCC" and "NLMCC" . . . .
>
> Section 6.06 . . . contains a reference to Sections 3.08 and 3.09 (Advertising Fund and PAC Fund, respectively) . . . .
>
> Section 6.07 (b) . . . addresses fringe benefit remedies at the end of sentence and therefore deals with penalty clauses. . . .
>
> Articles VII and VIII . . . also deal with the "LMCC" and "NLMCC" . . . .
>
> The International Approval Reference above the signature lines . . . may not be mandated . . . .
>
> Addendum Three . . . addresses the "LMCC" and "NLMCC," . . . .
>
> Addendum Four – MOU . . . is a separate agreement reached by third parties, NECA and OESCO, with the Union. . . .
>
> The newly imposed and created MOU also makes the parties subject to the current collective bargaining agreement's evergreen clause . . . .

Id. ¶¶ 52–109.

After filing a complaint on June 8, 2021, see ECF No. 2, Brent Electric filed its first amended complaint on July 1, 2021, claiming that the Court must vacate and set aside CIR's arbitration award under the LMRA and the Federal Arbitration Act, 9 U.S.C. ch. 1 ("FAA"). FAC ¶¶ 45–51.

4:21-cv-00246-CRK-CDL

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over the parties' claims arising under section 301 of the LMRA[3] and section 10 of the FAA pursuant to 28 U.S.C. § 1331.

On a Rule 12(b)(6) motion, the court assesses whether the plaintiff's complaint is legally sufficient to state a claim for relief. Broker's Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1135–36 (10th Cir. 2014). A complaint is legally sufficient if it contains factual allegations that state a plausible claim for relief on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain detailed factual allegations, it must still contain more than mere labels, legal conclusions, and a "formulaic recitation" of the claim's elements. Id. at 555. A plaintiff states a plausible claim when the plaintiff pleads facts allowing the court to reasonably infer the defendant is liable for the allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court considers the complaint and documents it incorporates, and any matters the court decides to judicially notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court accepts as true all well pled factual allegations. Twombly, 550 U.S. at 555–56.

---

[3] Section 301 of the LMRA provides that "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185. Parties may bring actions to enforce arbitration awards under section 301 of the LMRA even though the conduct involved amounts to an unfair labor practice under the National Labor Relations Board's jurisdiction. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).

## DISCUSSION

The Union argues the Court should dismiss Brent Electric's first amended complaint because it lacks grounds for the Court to vacate the arbitration award. Def. Br. at 6–24; Def. Reply at 1–10. Brent Electric argues it has pled sufficient facts to state a claim for vacating the arbitration award under the LMRA and the FAA because the award violates public policy and exceeds the CIR's authority by including permissive provisions in the 2021 CBA. Pl.'s Resp. to [Def. Br.] at 9–16, 18–20, ECF No. 21 ("Pl. Br."). Brent Electric also argues the CIR exceeded its powers by imposing new obligations on Brent Electric, drawing on a prior third-party agreement that is separate from the 2018 CBA. Id. at 16–18. For the following reasons, the Court determines Brent Electric has failed to state a claim and dismisses its claim to vacate the arbitral award.

Under section 10 of the FAA, courts set aside awards when arbitrators exceed their powers.[4] Courts may vacate an award for the following reasons:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[4] Courts looks to the FAA for guidance in labor arbitration cases under section 301 of the Labor Management Relations Act. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n.9 (1987).

9 U.S.C. § 10(a). In labor cases, arbitrators exceed their powers when their award fails to draw "its essence from the collective bargaining agreement." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597–98 (1960).

Additionally, a court may refuse to enforce arbitral awards that "violate law or public policy." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 42–43 (1987), citing W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983). The policy must be "well defined and dominant," and is to be ascertained "by reference to the laws and legal precedents." Id. The relevant law here, the National Labor Relations Act, 29 U.S.C. §§ 151–169 ("NLRA"), imposes requirements on employers and unions to collectively bargain in good faith.

Arbitrators do not exceed their powers when they decide mandatory collective bargaining provisions under the NLRA or permissive subjects to which the parties have agreed. Under the NLRA, there are mandatory subjects of bargaining, which include "wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). Additionally, parties are also free to agree to permissive subjects of bargaining. N.L.R.B. v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349 (1958). Permissive subjects of bargaining are those matters other than wages, working hours, and other conditions of employment. Id. As a general rule, arbitrators do not exceed their powers when ruling on a subject the parties have agreed to arbitrate. See id. ("Each of the two controversial clauses is lawful in itself. Each would be enforceable if agreed to by the unions.")

8

4:21-cv-00246-CRK-CDL

Authority exists in other circuits that one type of permissive clause, a second-generation interest arbitration clause,[5] violates public policy. See Loc. 58, Int'l Bhd. of Elec. Workers, AFL-CIO v. Se. Mich. Chapter, Nat'l Elec. Contractors Ass'n, Inc., 43 F.3d 1026, 1032 (6th Cir. 1995) (ruling that an arbitrator may not use a second-generation interest arbitration clause as a means of self-perpetuation); Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. Union No. 104, 794 F.2d 1452, 1457 (9th Cir. 1986) (ruling that arbitrators cannot make an interest arbitration clause self-perpetuating by including an interest arbitration clause in the new contract); N.L.R.B. v. Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d 1161, 1169 (5th Cir. 1976) (ruling that an interest arbitration clause in a new contract is unenforceable but declining to rule whether permissive terms generally are unenforceable). Second-generation interest arbitration clauses implicate public policy because the parties lose the ability to terminate the clause, which disturbs freedom of contract and disconnects the parties' negotiation of future agreements from the balance of economic power between them. See Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d at 1169. This circuit has yet to confront a permissive clause imposing second-generation interest arbitration, and this Court need not reach the question here as a second-generation interest arbitration clause is not at issue in this case.[6]

---

[5] Interest arbitration is the arbitration of new contract terms. See Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093, 1095 n.1 (2007).

[6] The 2021 CBA's dispute resolution clause requires both parties to submit a dispute to the CIR:

4:21-cv-00246-CRK-CDL

That courts have found second-generation interest arbitration clauses violate public policy does not undermine other permissive clauses. Precluding the use of interest arbitration clauses from compelling interest arbitration preserves the freedom of contract that arbitration supports. A party's freedom to agree to interest arbitration only exists when there is freedom not to agree to interest arbitration. However, the danger of self-perpetuation does not exist for other permissive subjects of arbitration. For example, a party's agreement to submit a provision for international union approval to interest arbitration does not extend beyond the agreement for example. See Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093, 1097 (2007) (ruling that a party to a collective bargaining agreement has a contractual obligation to negotiate or submit to interest arbitration). So too with evergreen clauses that do extend the terms of an agreement past its expiration, these clauses are not potentially self-perpetuating similar to interest arbitration provisions.[7] Finding permissive clauses other than second-

---

By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

2021 CBA, § 1.02, at 2.

[7] Brent Electric argues that evergreen clauses are permissive subjects of bargaining like interest arbitration clauses and are thus unenforceable. See Pl. Br. at 16–18; FAC ¶¶ 52–54. Brent Electric therefore implies that evergreen clauses pose the same danger as interest arbitration clauses—that they can become self-perpetuating. However, the evergreen clause in the 2021 CBA is terminable with ten days' notice, see 2021 CBA § 1.02(d), at 2, and thus is not potentially self-perpetuating.

4:21-cv-00246-CRK-CDL

generation interest arbitration unenforceable would inject additional uncertainty into labor negotiations, the avoidance of which is one of the polices underlying the LMRA. See Allied Chem. & Alkali Workers of Am., Loc. Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404 U.S. 157, 187 (1971) (describing the LMRA's aim as termination and modification of CBAs "without interrupting the flow of commerce or the production of goods" (quoting Mastro Plastics Corp. v. N.L.R.B., 350 U.S. 270, 284 (1956))).[8]

Here, the arbitration award imposing the 2021 CBA is enforceable pursuant to the interest arbitration agreement in the 2018 CBA. The parties agreed to the 2018 CBA, and Brent Electric does not challenge the validity of the interest arbitration provision itself. The parties chose arbitration to resolve any dispute over the next CBA's terms including the dispute over the inclusion of permissive provisions. But so long as the 2021 CBA does not contain an interest arbitration provision, the choice of arbitration and permissive provisions is finite—it ends in the 2021 CBA, and indeed the arbitrators here did not include an interest arbitration provision in the 2021 CBA. The parties agreed to include permissive clauses, including interest arbitration, in the 2018 CBA.[9]

---

[8] In light of the foregoing, the Court is unpersuaded by courts in other circuits that have held that all permissive clauses imposed by interest arbitration violate public policy. See Sheet Metal Workers, Int'l Ass'n, Loc. Union No. 24 v. Architectural Metal Works, Inc., 259 F.3d 418, 430 (6th Cir. 2001); Sheet Metal Workers Loc. Union No. 54, AFL-CIO v. E.F. Etie Sheet Metal Co., 1. F.3d 1464, 1476 (5th Cir. 1993); N.L.R.B. v. Sheet Metal Workers Int'l Ass'n, Loc. Union No. 38, 575 F.2d 394, 398–99 (2d Cir. 1978).

[9] Brent Electric also alleges the arbitrators included new provisions when it included the MOU in Addendum Four of the 2021 CBA. Pl. Br. at 16–18; see 2021 CBA,

4:21-cv-00246-CRK-CDL

Taking all the facts Brent Electric pleads as true, Brent Electric fails to allege facts that could support an inference that the arbitration award is unenforceable and thus does not state a plausible claim for why the Court should vacate the award.

## CONCLUSION

In light of the foregoing, it is

**ORDERED** that the Union's Motion to Dismiss the First Amended Complaint, ECF No. 18, is GRANTED; and it is further

**ORDERED** that Count 1 of Brent Electric's First Amended Complaint, ECF No. 10, against the Union is DISMISSED.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:   November 16, 2022
         New York, New York

---

Addendum Four, at 51. However, like the other permissive clauses in the 2021 CBA, these provisions are enforceable. The provisions at Addendum Four were no less a part of the 2018 CBA, despite being in an addendum, and Brent Electric fails to show how these provisions are not "[u]nresolved issues or disputes arising out of the failure to negotiate a renewal or modification" of the 2018 CBA. See 2018 CBA § 1.02(d), at 4. While Addendum Four of the 2018 CBA is at issue in the related case before this Court, Case No. 21-cv-00103, the Court does not reach the substance of those provisions here.

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.