## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**BRENT ELECTRIC CO., INC.,**

**Plaintiff/Counter-Defendant,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 584,**

**Defendant/Counter-Plaintiff.**

**4:21-cv-00246-CRK-CDL**

## OPINION AND ORDER

In the matter before the Court, the Brotherhood of Electrical Workers Local Union No. 584 ("the Union") counterclaimed against Brent Electric Company, Inc. ("Brent Electric"), to confirm an arbitral award issued by Council on Industrial Relations ("CIR") which resolved a dispute between Brent Electric and the Union concerning a 2018 Collective Bargaining Agreement ("2018 CBA"). See Counterclaim, July 15, 2021, ECF No. 16. Brent Electric had sued the Union because it objected to the terms of the successor collective bargaining agreement ("2021 CBA") imposed as a result of the arbitral award and sought to vacate the award. See First Am. Compl., July 1, 2021, ECF No. 10. The Court previously granted the Union's motion to dismiss Brent Electric's complaint. See Opinion and Order at 12, Nov. 16, 2022, ECF No. 45; see also Mot. Dismiss, July 15, 2021, ECF No. 18.

4:21-cv-00246-CRK-CDL

Both parties have moved for summary judgment on the Union's counterclaim. The Union, in addition to asking this Court to confirm the arbitral award, seeks additional remedies in connection with the confirmation of the award.  See Counterclaim at 8.  Specifically, the Union asks for an audit of Brent Electric's payroll records at Brent Electric's expense and attorneys' fees.  See id.  Brent Electric seeks summary judgment in opposition to the Union's claim to confirm the arbitral award. See Brent's Mot. Summary J., Apr. 21, 2023, ECF No. 68 ("Brent's Moving Br.").  The Union filed its response on May 19, 2023.  See Union's Opp. [Brent's Moving Br.], May 19, 2023, ECF No. 74 ("Union's Resp. Br.").  The Union moved for summary judgment on July 10, 2023.  See Br. Supp. Union's Mot. Summary J., July 10, 2023, ECF No. 77 ("Union's Moving Br.").  Brent responded to the Union's motion on July 31, 2023.  See Brent's Opp. [Union's Moving Br.], July 31, 2023, ECF No. 78 ("Brent's Resp. Br.").  The Union filed its reply on August 11, 2023.  See Union's Reply [Brent's Resp. Br.], August 11, 2023, ECF No. 79 ("Union's Reply").

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over the parties' claims arising under § 301 of the Labor Management Relations Act ("LMRA")[1] pursuant to 28 U.S.C. § 1331 (2018).

---

[1] Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185.

4:21-cv-00246-CRK-CDL

The Court shall grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When considering summary judgment, the Court must view all facts and inferences drawn from the record in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, only disputes over material facts—those affecting the outcome of the case—preclude summary judgment.  Id. at 248.

## UNDISPUTED FACTS[2]

Brent Electric authorized the Eastern Oklahoma Chapter of the National Electric Contractors Association ("NECA") to act on its behalf as representative for all matters related to the collective bargaining between NECA and the Union. Brent's First SOF ¶ 1.[3]  Pursuant to its agreement with NECA, Brent Electric agreed to be bound to the 2018 CBA concluded by NECA and the Union.  Brent's First SOF ¶¶ 2–3; Brent's Second SOF ¶ 3; Union's First SOF ¶ 3; Union's Second SOF ¶ 3; see IBEW Inside Construction Agreement, ECF No. 10-2 ("2018 CBA").  The 2018 CBA included Addendum Four Memorandum of Understanding ("Addendum Four"),[4]

---

[2] The Court draws the undisputed material facts from the record.  The parties provide their statements of fact in their briefs pursuant to Fed. R. Civ. P. 56(c).  See Brent's Moving Br. at 2–10 ("Brent's First SOF"); Brent's Resp. Br. at 1–7 ("Brent's Second SOF"); Union's Resp. Br. at 1–11 ("Union's First SOF"); Union's Moving Br. at 3–8 ("Union's Second SOF").

[3] The Union's statement of facts omits responses where the Union does not dispute Brent Electric's facts.  See Union's Resp. Br. at 2.

[4] In its motion for summary judgment, Brent Electric addresses Addendum Four of the 2018 CBA as separate and distinct from the 2018 CBA.  See Brent's First SOF ¶¶ 40–41, 44; Brent's Second SOF ¶¶ 3, 10, 12, 14.  However, the Union disputes Brent Electric's characterization of the Addendum as distinct from the 2018 CBA.  See

4:21-cv-00246-CRK-CDL

which involves NECA, the Union, and the Oklahoma Electrical Supply Company ("OESCO") and was initially executed on May 30, 2012, and renewed on June 1, 2018. See Compl. at Ex. D, July 1, 2021, ECF No. 10-6 ("Addendum Four"). The addendum regards Brent Electric's obligations toward the pension plan trust. Brent's First SOF ¶¶ 14–15; Union's First SOF ¶¶ 10, 14.

On September 18, 2020, Brent Electric informed NECA and the Union that it was revoking and terminating its authorization of NECA as its representative, and that it was also terminating the 2018 CBA. Brent's First SOF ¶¶ 5–6, 8; Brent's Second SOF ¶ 5; Union's First SOF ¶ 6; Union's Second SOF ¶ 5. On February 12, 2021, Brent Electric sent a letter to the Union regarding a CBA that would succeed the 2018 CBA, which was set to expire on May 31, 2021. Brent Electric's letter challenged "non-mandatory permissive subjects of bargaining under federal labor law," Brent's First SOF ¶¶ 17–21. Brent Electric argued "the Union could not compel or require Brent Electric to agree to or accept" the 2018 CBA provisions. Union's First SOF ¶¶ 18, 20–21. The Parties met in March and April of 2021, but were unable to successfully negotiate a successor to the 2018 CBA. Union's Second SOF ¶ 5; Brent's Second SOF ¶ 5.

---

Union's First SOF ¶ 10 ("But, Local 584 disputes any assertions or implications that this addendum's terms were not part of the 2018 CBA, and disputes that this addendum existed independently of the 2018 CBA"). Brent Electric did not file a reply to the Union's response. See Fed. R. Civ. P. 56(e)(2).

On April 9, 2021, the Union informed Brent Electric of its "intent to submit to the [CIR] for its consideration during the May 2021 regular CIR meeting unresolved issues that remain between the parties as of April 20, 2021, and that may continue to be unresolved in bargaining conducted after April 20th." Brent's First SOF ¶ 22; Union's Second SOF ¶ 6.  On April 16, 2021, Brent Electric declined the Union's invitation to join it in submitting their unresolved issues to the CIR for adjudication. Union's Second SOF ¶ 6; Brent's Second SOF ¶ 6.  Following Brent Electric's rejection of the invitation, the Union unilaterally submitted these unresolved issues to the CIR.  Brent's First SOF ¶ 24; Union's First SOF ¶ 24.  On April 30, 2021, Brent Electric informed the CIR that it objected to the Union's unilateral submission to the CIR.  Brent's First SOF ¶¶ 23, 26; Brent's Second SOF ¶¶ 6–7; Union's First SOF ¶ 26; Union's Second SOF ¶ 7.  With its objection to arbitration, Brent Electric enclosed its brief regarding the unresolved issues, including its opposition to inclusion in a successor CBA of alleged "non-mandatory permissive subjects of bargaining."  Brent's First SOF ¶ 27; Brent's Second SOF ¶ 7; Union's First SOF ¶ 27.

On May 27, 2021, the CIR transmitted to the parties its Preliminary Decision, including a successor CBA, dated May 19, 2021. Brent's First SOF ¶ 28; Brent's Second SOF ¶ 10; Union's First SOF ¶ 28; Union's Second SOF ¶ 10.  On May 30, 2021, Brent Electric sent a letter to the CIR alleging errors and omissions, such as the inclusion of alleged permissive subjects of bargaining and Addendum Four. Brent's First SOF ¶ 34; Brent's Second SOF ¶ 11; Union's First SOF ¶ 34; Union's Second SOF ¶ 11. On June 4, 2021, the CIR issued a Second Decision rejecting Brent

4:21-cv-00246-CRK-CDL

Electric's allegations of errors and omissions and containing a revised version of the 2021 CBA, correcting one clerical error.  Brent's First SOF ¶ 35; Brent's Second SOF ¶ 12; Union's First SOF ¶ 35; Union's Second SOF ¶ 12; see Compl. at Ex. O, July 1, 2021, ECF No. 10-15.  On June 28, 2021, Brent Electric received the CIR's Final Decision backdated May 19, 2021 and labeled Decision No. 8735, which also contained the 2021 CBA and Addendum Four.  Brent's First SOF ¶ 37; Brent's Second SOF ¶ 14; Union's First SOF ¶ 37; Union's Second SOF ¶ 14. The versions of the 2021 CBA attached to the Second Decision and the Final Decision are identical, and the final decision implemented the Second Decision.  Brent's First SOF ¶ 38; Union's First SOF ¶ 38.  Brent Electric has not signed the 2021 CBA since receiving the CIR's Final Decision on June 28, 2021.  Union's Second SOF ¶ 15; Brent's Second SOF ¶ 15.

## DISCUSSION

The parties dispute whether the Court should confirm the CIR award, order an audit, or impose attorneys' fees.  Brent Electric argues that it did not agree to arbitration of permissive subjects of bargaining and therefore the CIR's award is invalid, see Brent's Moving Br. at 11–25, while the Union argues that the unambiguous language of the 2018 CBA provides for arbitration, the award reflects the essence of the agreement between the parties and comports with public policy,[5]

---

[5] Permissive subjects of bargaining are those provisions addressing matters other than wages, working hours, and other conditions of employment. See NRLB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349 (1958). One particular type of permissive subject of bargaining is an interest arbitration clause.  "Interest arbitration is the arbitration of new contract terms."  Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093, 1095 n.1 (10th Cir. 2007).

see Union's Moving Br. at 11–24.  The Union asks the Court to confirm the award imposing the 2021 CBA including the provisions in Addendum Four.  Union's Moving Br. at 24.  The Union further seeks an audit of Brent Electric's business records related to payroll as well as attorneys' fees.  Union's Moving Br. at 19–21.  Brent Electric opposes both the request for an audit and attorneys' fees.  Brent's Response Brief at 10–11.  For the following reasons, the Court denies Brent Electric's motion for summary judgment on the Union's counterclaim, and grants in part and denies in part the Union's motion for summary judgment.

## I.    The Arbitrability of Disputes Arising from the Interest Arbitration Clause

Although the CIR concluded that the 2018 CBA empowered it to resolve the disputes concerning the negotiation of a successor agreement including the subject challenged here, the Union concedes that deference to an arbitral decision may be withheld where a court confronts a "gateway issue" going to arbitrability of the dispute.  Union's Resp. Br. at 13–14; Union's Moving Br. at 10–11.  Brent Electric does not explicitly frame its challenge as one of arbitrability; nonetheless Brent Electric's arguments implicitly challenge the arbitrability of certain disputes regarding the modification or renegotiation of the 2018 CBA.  Brent Electric states that it never agreed to submit permissive subjects of negotiation to the CIR.  Brent's Moving Br. at 23–25; Brent's Response Br. at 7–10.  However, because the Union and Brent Electric explicitly agreed to submit to arbitration any "unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this

4:21-cv-00246-CRK-CDL

agreement," Brent Electric agreed to submit the subjects of negotiation at issue here to the CIR.  See 2018 CBA § 1.02(d).

Gateway issues, i.e., disputes over whether the parties have a valid arbitration agreement at all, or whether an arbitration clause applies to a certain type of controversy, are questions of law for a court to decide.  See Dish Network L.L.C. v. Ray, 900 F.3d 1240, 1242 (10th Cir. 2018).  In so deciding, the Court will look to the language of the agreement and the issue involved to determine if the parties consented to submit the dispute to arbitration.  See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union & its Loc. 13-857 v. Phillips 66 Co., 839 F.3d 1198, 1204 (10th Cir. 2016).  If the language is ambiguous the Court applies a presumption of arbitrability for disputes and will order arbitration unless the Court determines "with positive assurance" that the parties intended to exclude the matter from arbitration. See Phillips 66 Co., 839 F.3d at 1204. A party can overcome this presumption with "forceful evidence that the parties intended to exclude the grievances from arbitration."  See Phillips 66 Co., 839 F.3d. at 1205 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585 (1960).

Brent Electric's argument that the CIR was powerless to include permissive subjects of arbitration fails.[6]  See Brent's Moving Br. at 14–20; Brent's Resp. Br. at 7–10.  It is undisputed that the parties agreed to the 2018 CBA, which provides:

---

[6] The CIR's letter of June 4, 2021 responding to Brent Electric's May 30, 2021 letter asserted that:

4:21-cv-00246-CRK-CDL

> Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication.

2018 CBA § 1.02(d); Brent's First SOF ¶¶ 2–3; Brent's Second SOF ¶ 4; Union's First

SOF ¶ 3; Union's Second SOF ¶ 4. The phrase "unresolved issues or disputes" is

unambiguous. "Unresolved" means "not settled, solved, or brought to resolution."

Merriam-Webster's   Dictionary,   https://www.merriam-webster.com/dictionary/

unresolve (last visited July 30, 2023). "Disputes" means a "controversy." Merriam-

Webster's Dictionary, https://www.merriam-webster.com/dictionary/ dispute (last

visited July 29, 2023). These terms are limited by the clause that follows "arising out

of the failure to negotiate a renewal or modification of this agreement." 2018 CBA §

1.02(d). Thus, the parties agreed to submit to arbitration unsettled controversies in

---

> We note that Brent Electric's letter of May 30, 3021, requests the deletion of several other provisions, which that letter describes as permissive subjects of bargaining. Those provisions have not been deleted for two reasons: 1) In each case, they are among the "[u]nresolved issues or disputes" that your company explicitly agreed to submit to arbitration, and 2) the CIR does not agree that those provisions are permissive subjects of bargaining.

See Brent's First SOF ¶¶ 34–35; Brent's Second SOF ¶ 11; Union's First SOF ¶ ¶ 34–35; Union's Second SOF ¶ 11 (additional facts asserted by Defendant to which Plaintiff did not reply). Despite conceding that gateway issues are to be decided by the Court, the Union also argues for deference to the CIR's interpretation of § 1.02(d) arguing that "[t]he Court has no opportunity, here, to establish Section 1.02(d)'s meaning in the first instance, so ordinary contract interpretation principles have no place." Union's Moving Br. at 20. The Court does not rely upon the CIRs rationale for determining that it was empowered to arbitrate the dispute before it, as whether it had such power is a question of law for the Court to decide. See Dish Network, 900 F.3d at 1242.

connection with the renewal or modification of the agreement. Section 1.02 has no language of limitation.   The language of § 1.02(d) captures a dispute over any provision arising from the negotiation of a successor agreement to the 2018 CBA.

Brent Electric counters that § 1.02(d) would have to explicitly state that it "included permissive issues" because permissive issues, "were not Unresolved Issues."[7] Brent's Moving Br. at 9–10, 23–24; Brent's Resp. Br. at 5–6. Brent Electric's argument cannot withstand scrutiny.   Brent Electric's argument assumes that the words "unresolved issues or disputes" in § 1.02(d) would only include mandatory subjects of negotiation.   Brent Electric argues "[t]he parties' duty to bargain created under Sections 8(a)(5), 8(b)(3) and 8(d) of the NLRA is limited to mandatory subjects of bargaining such as rates of pay, wages, hours of employment, or other terms and conditions of employment."   See Brent's Moving Br. at 11.   But the agreement to arbitrate is not so limited; rather, it extends to all subjects of negotiation among the parties including those created by contract. 2018 CBA § 1.02(d).   Section 1.02(d) must be read in context.   The entirety of § 1.02 refers to the agreement as a whole and does not limit itself to disputes arising from obligations imposed by the NLRA:

SECTION 1.02

   (a) Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or

---

[7] Brent Electric argues that there "is no evidence that Brent Electric waived its statutory right against being compelled to agree non-mandatory permissive subjects of bargaining. . ." despite signing the 2018 CBA. Brent's Moving Br. at 25 (referencing Brent Electric Letter of April 30, 2021, to the CIR).   As discussed more fully below, the duty to negotiate may stem from either statute or contract.   Here, the Union argues that Brent Electric contracted to resolve any disputes concerning the negotiation of a successor CBA to the 2018 CBA through arbitration.

4:21-cv-00246-CRK-CDL

terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

2018 CBA § 1.02. Subsection (a) refers to withdrawal from the agreement as a whole which itself includes both mandatory and non-mandatory subjects. Subsection (b) likewise speaks of changes to the agreement without distinction between the mandatory and non-mandatory subjects contained within the agreement. 2018 CBA § 1.02. Subsection (f) addresses terminating the agreement, not parts of the agreement. The entirety of § 1.02 including subsection (d) addresses the 2018 CBA as a whole. Thus, the language of § 1.02(d) unambiguously captures any disputes that result from the negotiation of a successor agreement to the 2018 CBA.

4:21-cv-00246-CRK-CDL

Even if one could construe the language of § 1.02(d) as ambiguous, Brent Electric would need to demonstrate that "the parties intended to exclude" the dispute from arbitration. Phillips 66 Co., 839 F.3d at 1204. Indeed, contrary to Brent Electric's position, subsection (d) would need to explicitly exclude permissive subjects of negotiation for § 1.02(d) not to apply to the dispute at issue here. Brent Electric points to nothing that would demonstrate that the parties intended to exclude permissive subjects of negotiation; rather Brent Electric argues only that permissive subjects can never be imposed in interest arbitration. As will be discussed below, Brent Electric's argument regarding whether interest arbitration may impose permissive subjects of negotiation is mistaken. Thus, there can be no argument that the parties agreed to arbitrate disputes regarding otherwise permissive subjects of negotiation.

## II.   Confirmation of the Award

The Union argues that the CIR's decision is entitled to great deference. See Union's Moving Br. at 8–9. Brent Electric counters that the deferential standard "does not allow the CIR to violate public policy or to impose on Brent Electric permissive subjects of bargaining in violation of federal law." Brent's Resp. Br. at 7. Brent Electric requests the Court grant summary judgment in its favor and refuse to confirm the CIR award because the CIR panel's inclusion of permissive subjects of bargaining in its final decision exceeded its powers and violates public policy. See Brent's Moving Br. at 11–20; Brent's Resp. Br. at 7–10. Having decided that the parties agreed to submit the renegotiation of the 2018 CBA to arbitration, the Court

4:21-cv-00246-CRK-CDL

must accept the decision so long as the award draws its essence from the agreement and comports with national labor policy.  Kennecott Utah Copper Corp. v. Becker, 195 F.3d 1201, 1204 (10th Cir. 1999).

Confirmation of an arbitral award requires a valid agreement to arbitrate, and that the award does not exceed the power of the arbitrators.[8]  See 9 U.S.C. §§ 9, 10(a)(4); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); see 9 U.S.C. § 2.[9]  When reviewing an arbitral award, the court upholds the arbitrator's decision "[s]o long as the award draws its essence from the collective bargaining agreement." Kennecott, 195 F.3d at 1204 (internal quotation marks omitted).  An award does not draw its essence from a CBA if it is "contrary to the express language of the contract"

---

[8] Courts provide "maximum deference . . . to the arbitrator's decision . . . because the standard of review of arbitral awards is among the narrowest known to the law." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462–63 (10th Cir. 1995) (internal quotation marks omitted) (quoting Litvak Packing Co. v. United Food & Commercial Workers, Loc. Union No. 7, 886 F.2d 275, 276 (10th Cir. 1989).

[9]  The Labor Management Relations Act of 1947 (LMRA) applies to CBA arbitration. Courts may also look to the provisions of the Federal Arbitration Act ("FAA") for guidance as well. See 29 U.S.C. §§ 141–197; United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n.9 (1987).  Pursuant to the FAA Courts may vacate an award for the following reasons:

> where the award was procured by corruption, fraud, or undue means;(2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

4:21-cv-00246-CRK-CDL

or "without rational support." LB & B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Loc. No. 113, 461 F.3d 1195, 1197–98 (10th Cir. 2006) (quoting Loc. No. 7 United Food and Com. Workers Int'l Union v. King Soopers, 222 F.3d 1223, 1227 (10th Cir. 2000)); Mistletoe Express Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977) (citing Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969)). The arbitrator's award is legitimate so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Loc. No. 7 United Food & King Soopers, 222 F.3d 1223, 1227 (10th Cir. 2000) (citing Misco, 484 U.S. at 38).

Finally, arbitrators exceed their powers when they render decisions violating law or public policy. See Misco, 484 U.S. 29, at 43 (citing W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983)). The inclusion of some, but not all, permissive clauses in interest arbitration awards violates national labor policy. See NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d 1161, 1171 (5th Cir. 1976) (holding that contract arbitration clauses "are not enforceable to perpetuate inclusion of contract arbitration clauses continuously in contract after contract," but parties are free to "agree to contract arbitration when they think it is mutually advantageous and entitles them to enforce arbitration over contract terms involving mandatory subjects of bargaining and perhaps others"); Am. Metal Prod., Inc. v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 104, 794 F.2d 1452, 1457 (9th Cir. 1986) (finding "[a]n arbitration panel cannot make [the interest arbitration clause in the expired

14

contract] self-perpetuating by including an interest arbitration clause in the new contract."); <u>Loc. 58, Int'l Bhd. of Elec. Workers, AFL-CIO v. Se. Michigan Chapter, Nat. Elec. Contractors Ass'n, Inc.</u>, 43 F.3d 1026, 1032 (6th Cir. 1995) (explaining, "the law is clear that an arbitrator may not use an interest arbitration clause as a means of self-perpetuation, and that this type of "second generation" interest arbitration clause cannot be included over another party's objection").

The award in this case takes its essence from the agreement and comports with national labor policy.  There can be no question that the CIR was "arguably construing or applying the contract."[10]   <u>See</u> <u>King Soopers</u>, 222 F.3d at 1227 (explaining that an arbitrator's award will be seen as drawing its essence from the collective bargaining agreement if the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority).   The CIR considered the provisions of 2018 CBA and included those provisions, in part, in the 2021 CBA.  Section 1.03 of the 2018 CBA agreement states "[t]his Agreement shall be subject to change or supplement at any time by mutual consent of the parties," suggesting that the permissive subjects were among the CBA issues that could be negotiated.  <u>See</u> 2018 CBA § 1.03. Moreover, the 2018 CBA also states that any unresolved issues arising from the desire to change or terminate the agreement may be "submitted jointly or unilaterally to the Council for adjudication." <u>Id.</u> at 1.02(d). By referencing the "[u]nresolved issues or disputes arising out of the failure to

_____

[10] The Court previously determined that "the arbitration award imposing the 2021 CBA is enforceable pursuant to the interest arbitration agreement in the 2018 CBA." Opinion and Order at 11, Nov. 16, 2022, ECF No. 45.

4:21-cv-00246-CRK-CDL

negotiate a renewal or modification," the parties intended the arbitrators to determine all the terms of a potential renewal or modification.  Id.

Brent Electric's insistence that the award exceeds the arbitrators' powers ignores the parties' contractual agreement to arbitrate.  See McElroy's, 500 F.3d at 1098. The obligation to negotiate various provisions in a labor agreement may stem from either statute or contract.  See generally Borg-Warner Corp., 356 U.S. 342. Section 29 of the United States Code imposes a statutory duty on unions and employers to bargain in good faith.  See 29 U.S.C. §§ 158(a)(5), (b)(3).  The National Labor Relations Act, 29 U.S.C. §§ 151–169 ("NLRA"), established that an employer commits an unfair labor practice by refusing to bargain collectively with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement.  29 U.S.C. § 158(d).

Parties are also free to contractually agree to negotiate permissive subjects. See Borg-Warner, 356 U.S. 342, 349; see also Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093, 1097 (10th Cir. 2007). The Tenth Circuit recognized the distinction between statutory and contractual obligations in McElroy's.  McElroy, a mechanical contractor, sought to terminate its agreement with the Local Union on the contract's expiration date despite the existence of an interest arbitration clause.  Id. at 1095.  When McElroy refused to execute the established renewal contract it argued that the national labor policy allowed the termination of a pre-hire agreement without any obligation to negotiate for a renewal.  Id. at 1096. The Tenth Circuit acknowledged the absence of a statutory obligation to renew the

4:21-cv-00246-CRK-CDL

agreement but found that the interest arbitration to which McElroy had agreed created a contractual obligation to renew the contract. Id. at 1097.[11]   See also Columbus Printing Pressmen, 543 F.2d 1161, 1171.   Thus, even absent a statutory duty to negotiate terms by virtue of the NLRA, parties will be required to negotiate where they have agreed to do so.[12]   McElroy's, 500 F.3d at 1097.   Parties' freedom to contractually agree to negotiate non-mandatory subjects of negotiation gives rise to

---

[11] Brent Electric argues that McElroy's is inapposite because in that case the parties did not "challenge the arbitration award on the basis that it incorporated non-mandatory, permissive subjects of bargaining." Brent's Resp. Br. at 9–10.  Although the facts in McElroy's differ from those in the current case, the rationale in McElroy's applies in this case.  In McElroy's, the court held parties would be bound to negotiate a renewal agreement where they had contractually agreed to do so in an interest arbitration clause, even absent a statutory obligation.  See McElroy's, 500 F.3d at 1097.

[12] Brent Electric cites to cases where the parties had failed to agree to submit disputes over permissive terms, which are inapposite.  For example, in Terex Corp. v. Loc. Lodge 790 Int'l Ass'n of Machinists, No. 95-cv-5190, 1996 WL 582744 (10th Cir. 1996) (unpublished) the Court of Appeals reversed the district court's grant of judgment on the pleadings rejecting the plaintiff's attempt to vacate an arbitral award arising from the parties' collective bargaining agreement.  However, the collective bargaining agreement in that case limited the authority of the arbitrator to "application and interpretation of the existing Agreement."  Id. at *1.  The 2018 CBA in this case contains no such limitation on the scope of CIR's authority.

Likewise, in Pipefitters Loc. Union No. 208 v. Mech. Contractors Ass'n of Colo., 507 F. Supp. 935 (D. Colo. 1981), the district court granted judgment for the plaintiff, rejecting non-mandatory subjects of bargaining which the arbitral award included in the successor CBA.  The arbitration clause in that case required both parties to submit the dispute to arbitration, and the district court determined the plaintiff had not agreed to arbitrate the challenged clauses.  Id. at 936, 939 ("if the parties have not reached a new agreement . . . the parties shall forthwith submit all points of dispute [for arbitration]") (internal brackets omitted).  In contrast, the arbitration clause in the 2018 CBA only requires one party to submit issues to arbitration.  See 2018 CBA § 1.02(d) ("Unresolved issues or disputes . . . may be submitted jointly or unilaterally to the Council for adjudication").

4:21-cv-00246-CRK-CDL

a concomitant freedom to employ an interest arbitration clause to agree to arbitrate such subjects.

Brent Electric's argument that the arbitration award violates a well-defined public policy fails because national labor policy does not preclude parties from contractually agreeing to the arbitration of permissive subjects of negotiation, rather it precludes only agreement to self-perpetuating permissive clauses.  Brent Electric's analysis overlooks the character of the disputes in the cases it cites in support of this argument. First, Brent Electric relies on a series of cases that concern second-generation interest arbitration clauses to argue that the award violates national labor policy. See Brent's Moving Br. at 12.  A second-generation interest arbitration clause, also known as a new contract arbitration clause, is a clause that results from an interest arbitration and provides for the unilateral invocation of interest arbitration. See Columbus Printing Pressmen, 543 F.2d at 1163 n.4. Second-generation interest arbitration clauses pose a unique danger because they are self-perpetuating and thus undermine, rather than reinforce, freedom of contract. See id. at 1171 (holding second-generation interest arbitration clauses are unenforceable due to the risk of self-perpetuation); Loc. 58, Int'l Bhd. of Elec. Workers, AFL-CIO v. S.E. Mich. Ch., Nat'l Elec. Contractors Ass'n, Inc., 43 F.3d 1026, 1032 (6th Cir. 1995) (severing second-generation interest arbitration clause from arbitral award); Sheet Metal Workers Int'l Ass'n Loc. Union No. 24 v. Architectural Metal Workers, Inc., 259 F.3d 418, 430–32 (6th Cir. 2001) (invalidating second-generation interest arbitration clause in arbitral award and remanding to exclude all non-mandatory provisions); American

Metal Prods, Inc. v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 104, 794 F.2d 1452 (9th Cir. 1986) (invalidating second-generation interest arbitration clause in arbitral award); Sheet Metal Workers Int'l Ass'n Loc. 14 v. Aldrich Air Conditioning, 717 F.2d 456 (8th Cir. 1983) (invalidating second-generation interest arbitration clause in arbitral award). The 2021 CBA does not contain a second-generation interest arbitration clause.[13]

Secondly, Brent Electric cites out of circuit cases for the proposition that any permissive clause imposed by interest arbitration violates national labor policy. See Sheet Metal Workers Loc. Union No. 54 v. E.F. Etie Sheet Metal Co., 1 F.3d 1464 (5th Cir. 1993) cert. denied, 516 U.S. 1117 (1994) (citing NLRB v. Sheet Metal Workers Int'l Ass'n Local Union No. 38, 575 F.2d 394 (2d Cir. 1978)). Brent Electric's reading of these cases misapplies Supreme Court precedent regarding statutorily mandated subjects of negotiation to cases in which parties have contractually agreed to

---

[13] The Court previously determined the interest arbitration clause at issue here was valid and did not reach the issue of whether a self-perpetuating arbitration clause, also called a second-generation interest arbitration clause, is valid. See Opinion and Order at 9, Nov. 17, 2022, ECF No. 45. Interest arbitration is not self-perpetuating here because the CIR included an arbitration clause in the 2021 CBA requiring both parties to submit a future dispute to the CIR:

> By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

2021 CBA § 1.02(e).

4:21-cv-00246-CRK-CDL

negotiate non-mandatory terms and are therefore unpersuasive.  <u>See</u> Brent's Moving Br at 11–13.   First, in <u>E.F. Etie</u> the Fifth Circuit invalidated non-mandatory provisions requiring contributions to an industry fund and limiting the employer's ability to subcontract to nonunion employees.  <u>E.F. Etie</u>, 1 F.3d at 1476.  The court invoked the Second Circuit's decision in <u>Local Union No. 38</u> which itself relied upon <u>Allied Chem. & Alkali Workers of Am., Loc. Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.</u>, 404 U.S. 157 (1971).  Brent Electric cites these cases for the proposition that non-mandatory subjects in arbitration awards are "not enforceable" and "nonmandatory provisions in arbitration award[s] are void."  <u>See</u> Brent's Moving Br. at 12. A close reading of these cases reveals that they cannot support the position Brent Electric asserts.

As a preliminary matter <u>Allied Chemical</u> did not involve interest arbitration. Rather, the court in <u>Allied Chemical</u>, addressed whether a party's unilateral midterm modification of a collective-bargaining contract terms constitutes an unfair labor practice under 29 U.S.C. § 158(d). <u>Allied Chem.</u>, 404 U.S. at 183.  The court held that a unilateral and midterm modification is only an unfair labor practice when it changes a term that is a mandatory, rather than permissive, subject of bargaining. <u>Id.</u> at 185. Further, the court explained that the remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract not in an unfair-labor-practice proceeding.  <u>Id.</u> at 188.

Nonetheless, in <u>Local Union No. 38</u>, the Second Circuit appeared to read <u>Allied Chemical</u> to limit when non-mandatory terms could not be resolved in interest

4:21-cv-00246-CRK-CDL

arbitration. Local Union No. 38, 575 F.2d at 399 ("Thus, as applied to nonmandatory subjects, an interest arbitration provision is contrary to national labor policy because it deprives the parties of their right to insist on excluding non-mandatory subjects from the collective bargaining agreement").[14]   However, the Second Circuit later clarified that Local Union No. 38 applied only where there was no pre-existing contract:

> The Company's initial argument against arbitrability contends that product level is not a mandatory subject of bargaining and for that reason is beyond the scope of arbitration. The argument rests on an overreading of our opinion in NLRB v. Sheet Metal Workers Local 38, 575 F.2d 394 (2d Cir. 1978). That case involved a clause making arbitrable disputes between the parties concerning formation of a new contract. As to such a clause (referred to as an "interest arbitration provision,") we said that it covered only disputes as to which bargaining was mandatory . . . . That decision, however, did not place a similar limit on the arbitrability of disputes arising under an existing contract. Indeed, Sheet Metal Workers explicitly recognized the parties' freedom "'to agree or not to agree'" with respect to subjects of nonmandatory bargaining (quoting Borg–Warner, 356 U.S. 342, at 398).  If the parties elect to include in their agreement a provision governing a matter not subject to mandatory bargaining and also adopt a broad arbitration clause, nothing in Sheet Metal Workers, labor law, or the Arbitration Act precludes arbitration of a dispute concerning the meaning or application of that provision.

---

[14] In adopting its position, the Local 38 court noted "the Board previously has espoused the position we now adopt." NLRB. v. Sheet Metal Workers Local 38, 575 F.2d 394 (2d Cir. 1978) (citing Columbus Printing Pressmen, 543 F.2d at 1169). Yet in rejecting a self-perpetuating arbitration clause in Pressmen, the Fifth Circuit noted nonetheless that parties are free to agree to contract arbitration when they think it is mutually beneficial, and the clause "entitles them to enforce arbitration over contract terms involving mandatory subjects of bargaining and perhaps others." See id.

4:21-cv-00246-CRK-CDL

Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union, Loc. 812, Int'l Bhd. of Teamsters, 39 F.3d 408, 410 (2d Cir. 1994).  Following Local Union No. 38, the court in E.F. Etie, invoked Local Union 38, stating "[i]nsofar as an interest arbitration proceeding forced a party to put nonmandatory issues on the table, it was unenforceable as contrary to that policy."  E.F. Etie Sheet Metal Co., 1 F.3d 1464, 1476 (5th Cir. 1993).

Brent Electric's reading of E.F. Etie and Local Union 38 to prohibit interest arbitration of all non-mandatory subjects is incorrect because neither case held that interest arbitration could not resolve non-mandatory subjects when the parties had agreed to interest arbitration for non-mandatory subjects. Further, Allied Chemical did not involve interest arbitration.  See Allied Chem., 404 U.S. 157.  The court's statements in Allied Chemical regarding permissive subjects of arbitration related to grievance arbitration, i.e., just because a party agreed to grievance arbitration of a permissive subject once, does not mean that it must agree to grievance arbitration, or any permissive clause going forward.  See id. at 188. Indeed, the Second Circuit subsequent to both E.F. Etie, and Local Union 38 clarified that "[i]f the parties elect to include in their agreement a provision governing a matter not subject to mandatory bargaining and also adopt a broad arbitration clause, nothing in Sheet Metal Workers, labor law, or the Arbitration Act precludes arbitration of a dispute concerning the meaning or application of that provision."  Coca-Cola Bottling, 39 F.3d at 410.

22

4:21-cv-00246-CRK-CDL

Section 1.02 of the 2018 CBA provides that "Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement . . . may be submitted jointly or unilaterally to the Council for adjudication . . . The Council's decisions shall be final and binding." 2018 CBA § 1.02(d).  Here, the parties agreed to submit unresolved issues in the 2018 CBA, including permissive subjects to arbitration.

## III.   Addendum IV

Brent Electric separately argues that the CIR's award forces Brent Electric to enter into a "freestanding memorandum of understanding" or a "new tripartite agreement" between itself, the Union and NECA. Brent's Moving Br. at 20–21; Brent's Response Br. at 5–6.  The Union responds that "2018 CBA Section 1.02(d) set no limits on the provisions that the CIR could include in an awarded contract," Addendum Four was included in the 2018 CBA, and its inclusion in the award is beyond this Court's review.  Union's Resp. Br. at 23–25.

Brent Electric contractually agreed to submit any disputes or unresolved issues concerning the negotiation of a renewal agreement to the 2018 CBA to arbitration.  Addendum Four was included in the 2018 CBA.  See Brent Elec. Co. v. Int'l Bhd. of Elec. Workers Local Union No. 584, No. 4:21-cv-00246, 2022 WL 16973249, 13* n.9 (N.D. Okla. Nov. 16, 2022); see also Brent's First SOF ¶¶ 10, 14; Union's First SOF ¶¶ 10, 14.  The CIR's inclusion of Addendum Four as part of the 2021 CBA is a determination of the arbitrator which will only be set aside because the CIR was not "arguably construing or applying the contract and acting within the

scope of his authority." See King Soopers, 222 F.3d. 1223,1227 (citing Misco, 484 U.S. 29, at 38). Brent Electric fails to demonstrate that the arbitrator was arguably construing or applying the contract in a manner that was beyond the scope of its authority.

## IV.   Audit

The Union asks the Court to appoint an accountant and order an audit of Brent Electric's business records at Brent Electric's expense. See Union's Moving Br. at 19; see also Union's Reply at 3. The Union argues that an audit is appropriate because Brent Electric has refused to implement the CIR's award, and that an audit will ensure or confirm Brent Electric's compliance with the 2021 CBA. See Union's Moving Br. at 19. In the event of an appeal by Brent Electric, the Union also asks that the Court order Brent Electric to preserve its payroll-related business records for work performed since June 1, 2021. See Union's Moving Br. at 20. Brent Electric contests the request for an audit in a one-sentence subheading of its brief and adds that the cost of any ordered audit should be paid by the Union and that both parties should participate in the selection of an accountant. See Brent's Resp. Br. at 10. Brent Electric makes no response to the Union's request that the Court order it to preserve its payroll related business records concerning bargaining unit work performed since June 1, 2021.

The request for an audit is premature and therefore the Court declines to impose this remedy in connection with the confirmation of the award. Although the Union cites one out-of-circuit case where a court ordered an audit under similar

4:21-cv-00246-CRK-CDL

circumstances, see Union's Moving Br. at 19–20, the Union fails to demonstrate that Brent Electric will not comply with an order from this Court confirming the award.[15] Should Brent Electric fail to comply with this Court's order, the Union may then seek an order from this Court to enforce its judgment.  Fed. R. Civ. P. 69(a)(1).  In order to preserve the efficacy of any future enforcement order, the Court will however order Brent Electric to preserve its payroll-related business records for work performed from June 1, 2021, until the conclusion of all appeals from this order.

## V.    Attorneys' Fees

The Union seeks an award of attorneys' fees, claiming that Brent Electric lacked justification for its noncompliance with the CIR's award.  See Union's Moving Br. at 21–24; see also Union's Reply, ECF No. 79 at 4.  Brent Electric argues that attorneys' fees are unwarranted because there is no evidence that it "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" by challenging the CIR's award.  See Brent's Resp. Br. at 11.

In an action brought by a union to enforce an arbitration award, "the allowance of attorneys' fees is discretionary."  See Fabricut, Inc. v. Tulsa Gen. Drivers, Warehousemen & Helpers, Loc. 523, 597 F.2d 227, 230 (10th Cir. 1979). A successful party may recover attorneys' fees "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  See F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co., 417 U.S. 116, 129 (1974).  Further, the "district court has

---

[15] Nor does the Union cite any authority for its view that it should select an auditor and Brent Electric should bear the costs.

4:21-cv-00246-CRK-CDL

authority to award attorneys' fees where it determines that a party has without justification refused to abide by the award of an arbitrator." See Int'l Union of Dist. 50, United Mine Workers of Am. v. Bowman Transp., Inc., 421 F.2d 934, 935 (5th Cir. 1970) (finding that under the facts of the particular case, the District Court did not abuse its discretion in awarding attorneys' fees and costs incurred by the union).

In Fabricut, the Tenth Circuit affirmed the District Court's decision to deny an attorney fee award because the plaintiff, "did not act in bad faith and was not without justification for challenging the arbitrator's award." See Fabricut, Inc. v. Tulsa Gen. Drivers, Warehousemen & Helpers, Loc. 523, 597 F.2d 227, 230 (10th Cir. 1979). Rather, the Tenth Circuit considered the plaintiff's claim that the award exceeded the arbitrator's authority was made on substantial grounds and in good faith. See Fabricut, Inc., 597 F.2d at 230.

Despite Brent Electric's incorrect understanding of Tenth Circuit and out-of-circuit precedent, Brent Electric's claims fail to rise to the level of vexatious, wanton, or oppressive action, and the Union offers no evidence that the claims have been asserted in bad faith. See Fabricut, Inc., 597 F.2d at 230. Although Brent Electric's arguments concerning the relevant precedent fail to persuade, the Court cannot conclude that they are without justification. Therefore, the Court denies the Union's request for an award of attorneys' fees.

**CONCLUSION**

For the foregoing reasons, Brent Electric's motion for summary judgment, see ECF No. 68, is denied. The Union's motion for summary judgment, see ECF No. 76,

4:21-cv-00246-CRK-CDL

is granted in part and denied in part. The arbitration decision and award of the CIR

dated June 4, 2021, is confirmed.  The Union's request for an audit of Brent Electric's

business records is denied.  The Union's request for attorneys' fees is also denied.

Brent Electric shall preserve its payroll-related business records for work performed

from June 1, 2021, through the pendency of any appeal taken from this Court's

decision.  The Court will enter a separate judgment in accordance with Federal Rule

of Civil Procedure 58.

/s/ Claire R. Kelly  
Claire R. Kelly, Judge[*]

Dated:        September 6, 2023  
              New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.