## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRENT ELECTRIC CO., INC.,** | |
| **Plaintiff/Counter-Defendant,** | |
| **v.** | |
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 584,** | **4:21-cv-00246-CRK-CDL** |
| **Defendant/Counter-Plaintiff.** | |

## OPINION AND ORDER

Before the Court is Plaintiff/Counter-Defendant Brent Electric Company Inc.'s ("Brent Electric") Motion to Stay Enforcement Pending Appeal ("Motion to Stay"), Mot. Stay Enforcement Pending Appeal, Nov. 1, 2023, ECF No. 88 ("Brent Elec. Mot."), in the United States Court of Appeals for the Tenth Circuit. See Appeal No. Information, Oct. 5, 2023, ECF No. 84; Brent Elec. Co., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 584, Oct. 5, 2023, Appeal Nos. 22-05104 & 23-5108. Brent Electric seeks to stay enforcement of this Court's Judgment, see Judgment, Sept. 6, 2023, ECF No. 81 ("Sept. 6 J.") issued on September 6, 2023, in which the Court confirmed the arbitration award of the Council on Industrial Relations ("CIR"). See Exh. P: CIR Decision 8735 at 1, May 19, 2021, ECF No. 10-16 ("CIR Dec."). For the reasons that follow, the Motion to Stay is denied.

**4:21-cv-00246-CRK-CDL**

## BACKGROUND

Brent Electric sued the Brotherhood of Electrical Workers Local Union No. 584 ("the Union") challenging the terms of the 2021 successor collective bargaining agreement ("2021 CBA") imposed as a result of an arbitral award issued by the CIR. First Am. Compl. at ¶¶ 45–110, July 1, 2021, ECF No. 10. The CIR issued the award in response to a dispute between Brent Electric and the Union concerning a 2018 Collective Bargaining Agreement ("2018 CBA"). See CIR Dec. at 1. The arbitral award instructed the parties to sign and implement the 2021 CBA. Id.

Brent Electric sought to vacate the arbitral award. See First Am. Compl. at ¶¶ 45–110. The Union counterclaimed against Brent Electric to confirm the award. See Counterclaim, July 15, 2021, ECF No. 16. The Court granted the Union's motion to dismiss Brent Electric's complaint ("November 16 Order"). See Opinion and Order at 12, Nov. 16, 2022, ECF No. 45 ("Nov. 16 Order"); see also Mot. Dismiss, July 15, 2021, ECF No. 18. Both parties moved for summary judgment on the Union's counterclaim. [Brent Elec.] Mot. Summ. J. at 1, Apr. 21, 2023, ECF No. 68; [Union] Mot. Summ. J. at 1, July 10, 2023, ECF No. 76. The Union, in addition to asking the Court to confirm the arbitral award and grant attorney's fees, sought an order requiring Brent Electric to sign the 2021 CBA as well as an audit of Brent Electric's payroll records at Brent Electric's expense. Brief re [Union] Mot. Summ. J. at 19, July 10, 2023, ECF No. 77.

**4:21-cv-00246-CRK-CDL**

The Court denied Brent Electric's motion for summary judgment, granted the Union's motion for summary judgment, confirmed the arbitral award, denied the Union's request for attorneys' fees, denied the Union's request for an audit of Brent Electric's business records and ordered that Brent Electric shall preserve its payroll-related business records concerning bargaining unit work performed from June 1, 2021 through the pendency of any appeal ("September 6 Order").  Opinion & Order at 26–27, Sept. 6, 2023, ECF No. 80 ("Sept. 6 Order"); Sept. 6 J. at 1.  The CIR award confirmed by the Court directed the parties to "sign and implement immediately" the 2021 Agreement.  See CIR Dec. at 1.

## DISCUSSION

Brent Electric fails to demonstrate that it is entitled to a stay.  Brent Electric argues it is entitled to a stay pending appeal of the September 6 Order because (1) its appeal is likely to succeed on the merits; (2) it will suffer irreparable harm if a stay is not granted; (3) the Union will not be substantially injured by a stay of enforcement; and (4) granting a stay is in the interest of the public.  See [Brent Elec.] Reply to [Union] Resp. at 2–8, Dec. 1, 2023, ECF No. 90 ("Brent Elec. Reply").  The Union argues that a stay of enforcement should be denied because (1) Brent Electric cannot make a strong showing of success on the merits of its appeal; (2) Brent has not established irreparable injury absent a stay; (3) the Union will suffer harm if the September 6 Order is held in abeyance; and (4) the public interest weighs in favor of denying Brent Electric's motion.  See Union Resp. Opp'n [Brent Elec. Mot.] at 4–11, Nov. 17, 2023, ECF No. 89 ("Union Resp.").

3

**4:21-cv-00246-CRK-CDL**

The standard for a stay regarding equitable relief is governed by Federal Rule of Civil Procedure 62 provisions (c) and (d).[1]  See Fed. R. Civ. P. 62(c)–(d).  Rule 62(c) provides that "an interlocutory or final judgment in an action for an injunction" will not be stayed after it is entered, even if an appeal is granted, unless the court orders otherwise.  Fed. R. Civ. P. 62(c)(1).  Rule 62(d) allows a court to suspend, restore, modify, or grant an injunction—on terms that secure the opposing party's rights— while an appeal is pending from a final judgment granting, modifying, or refusing an injunction.  Fed. R. Civ. P. 62(d).

A movant's request for a stay for equitable relief is evaluated under a four-factor framework.  See Nken v. Holder, 556 U.S. 418, 434 (2009); see also 10th Cir. R. 8.1.  Those factors include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken, 556 U.S. at 434 (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); see also First W. Cap. Mgmt. Co. v. Malamed, 874 F.3d 1136, 1141 (10th Cir. 2017); 10th Cir. R. 8.1.[2]  The considerations governing issuance of an injunction overlap with

---

[1]  The Court's September 6 Order and Judgment confirmed the CIR award, ordered that the parties execute and comply with the 2021 CBA, and ordered preservation of Brent Electric's books and records.  See Sept. 6 Order at 26–27; Sept. 6 J. at 1; CIR Dec. at 1.  Therefore, Rule 62(c)–(d) governs Brent Electric's request for a stay.  See Fed. R. Civ. P. 62.

[2]  Rule 8.1 of the 10th Circuit Local Rules mirrors the Nken factors, and provides in the relevant parts:

No motion for a stay or an injunction pending appeal will be considered unless

4:21-cv-00246-CRK-CDL

those governing a stay due to the similar concerns raised when evaluating anticipated

action before its conclusive legality has been determined.  See Nken, 556 U.S. at 434

(citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)); see also Warner

v. Gross, 776 F.3d 721 (10th Cir. 2015) ("A motion for stay pending appeal is subject

to the exact same standards [as a preliminary injunction]").

The first two factors are the most critical in determining whether a stay is

appropriate.  See Nken, 556 U.S. at 434.  Success on the merits requires "more than

a possibility of relief," or chances that are "better than negligible."  Id.  Rather, the

moving party must show that it is likely to succeed on the merits of its claim.  See

Dine Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1282 (10th Cir.

2016) (citing Winter, 555 U.S. at 24) (rejecting deviations from the preliminary

injunction test and defining the success on the merits prong as "likely to succeed").

A showing of irreparable harm requires "certain and great" injury that is "not

merely serious or substantial."  See Dominion Video Satellite, Inc. v. Echostar

Satellite Corp., 356 F.3d 1256, 1262–63 (10th Cir. 2004); Sampson v. Murray, 415

U.S. 61, 90 (1974) (stating that "[m]ere injuries, however substantial, in terms of

---

the applicant addresses all of the following:
(A) the basis for the district court's or agency's subject matter jurisdiction and
    the basis for the court of appeals' jurisdiction, including citation to statutes
    and a statement of facts establishing jurisdiction;
(B) the likelihood of success on appeal;
(C) the threat of irreparable harm if the stay or injunction is not granted;
(D) the absence of harm to opposing parties if the stay or injunction is granted;
    and
(E) any risk of harm to the public interest.
10th Cir. R. 8.1; see also Hilton, 481 U.S. at 776.

**4:21-cv-00246-CRK-CDL**

money, time and energy necessarily expended in the absence of a stay, are not

enough," and asserting that temporary loss of income is not irreparable harm); Nken,

556 U.S. at 434 ("simply showing some possibility of irreparable injury fails to satisfy

the [irreparable injury] factor") (internal quotations and citations omitted). The harm

must be concrete, and it must pose such a significant risk that it cannot be undone or

corrected by future money damages. See DTC Energy Grp., Inc. v. Hirschfeld, 912

F.3d 1263, 1270 (10th Cir. 2018) (affirming district court's denial of preliminary

injunction based in part on speculative harm, including possible loss of customers,

possession of trade secrets, and unfair competition, that could result without an

injunction); Salt Lake Trib. Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1105 (10th

Cir. 2003) (holding that the movant's claim that continued management of a

newspaper by the opposing party did not constitute irreparable harm because it could

be remedied by money damages); Sampson, 415 U.S. at 90 ("The possibility that

adequate compensatory or other corrective relief will be available at a later date, in

the ordinary course of litigation, weighs heavily against a claim of irreparable harm");

RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (holding that merely

speculative harm that could be corrected by money damages is insufficient to

constitute irreparable harm and affirming the district court's injunction for dispute

over title of real property); First W. Capital Mgmt. Co., 874 F.3d at 1141 (holding that

"the movant 'must demonstrate a significant risk that he or she will experience harm

that cannot be compensated after the fact by money damages'" and vacating the

district court's injunction to prevent misuse of trade secrets because it could be

6

remedied by money damages) (quoting Fish v. Kobach, 840 F.3d 710, 751 (10th Cir. 2016)).  In sum, a movant for a stay pending appeal "must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal."  Nken, 556 U.S. at 439 (Kennedy, J., concurring) (internal quotations and citations omitted); see also Pueblo of Pojoaque v. State, 233 F. Supp. 3d 1021, 1141 (D.N.M. 2017).

A party meeting the high threshold standard of the first two factors must then show that issuance of a stay will not substantially injure opposing or interested parties to the proceeding, and it must also show that the public interest weighs in favor of a stay.  Nken, 556 U.S. at 435.  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  Id. at 433–34.  Moreover, a stay is not a matter of right—even where there is potential for irreparable harm—but rather is a fact-specific "exercise of judicial discretion."  Id. at 433 (citing Virginian Ry. Co. v. United States, 272 U.S. 658, 672–73 (1926)).

In this case, Brent Electric fails to show that it will likely succeed on the merits or that it will suffer any harm that cannot be ameliorated if the Court of Appeals reversed this Court's decision.  Brent Electric's persistent reliance on the same arguments it raised in its responses to the motions underlying this Court's November 16 and September 6 Orders remain unpersuasive and thus fail to demonstrate likely success on the merits of the claims.  See Brent Elec. Reply at 2–4; see also Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc., 423 F. Supp. 3d 1066,

**4:21-cv-00246-CRK-CDL**

1073 (D. Colo. 2019) (rejecting movant's request for stay pending appeal where the moving party "re-hash[ed] the same arguments" in its brief that did not amount to a demonstration of a "likelihood of success on appeal"). Further, that there might be a possibility that Brent Electric obtains reversal in the Court of Appeals is an insufficient ground for granting a stay pending appeal. See Nken, 556 U.S. at 434–35 (holding that a "possibility" of chances of success on the merits standard is too lenient for stay analysis).

Brent Electric mischaracterizes the nature of the issue before the Court to argue that there can be any dispute as to the outcome. Brent Elec. Reply at 2–4. In its reply brief, Brent Electric asserts it has a strong likelihood of success on appeal for its position that an arbitrator cannot "impose permissive subjects of bargaining on an employer." Brent Elec. Reply at 2. Brent Electric claims that the Court "expressly acknowledged that its holding on this issue conflicted with 'courts in other circuits that have held that all permissive clauses imposed by interest arbitration violate public policy.'" Id. at 3 (quoting Nov. 16 Order at 11 n.8). Brent Electric neglects to acknowledge that this footnote follows the Court's reasoning which distinguishes second-generation interest arbitration clauses from other permissive clauses to which the parties have agreed. In doing so, the Court emphasized the parties' ability to consent to permissive subjects of arbitration and distinguished second-generation interest arbitration clauses:

> That courts have found second-generation interest arbitration clauses violate public policy does not undermine other permissive clauses. Precluding the use of interest arbitration clauses from compelling interest arbitration preserves the freedom of contract that arbitration

4:21-cv-00246-CRK-CDL

supports.  A party's freedom to agree to interest arbitration only exists when there is freedom not to agree to interest arbitration.  However, the danger of self-perpetuation does not exist for other permissive subjects of arbitration.  For example, a party's agreement to submit a provision for international union approval to interest arbitration does not extend beyond the agreement for example.  See Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093, 1097 (2007) (ruling that a party to a collective bargaining agreement has a contractual obligation to negotiate or submit to interest arbitration).  So too with evergreen clauses that do extend the terms of an agreement past its expiration, these clauses are not potentially self-perpetuating similar to interest arbitration provisions.  Finding permissive clauses other than second-generation interest arbitration unenforceable would inject additional uncertainty into labor negotiations, the avoidance of which is one of the polices underlying the LMRA.  See Allied Chem. & Alkali Workers of Am., Loc. Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404 U.S. 157, 187 (1971) (describing the LMRA's aim as termination and modification of CBAs "without interrupting the flow of commerce or the production of goods" (quoting Mastro Plastics Corp. v. N.L.R.B., 350 U.S. 270, 284 (1956))).

Here, the arbitration award imposing the 2021 CBA is enforceable pursuant to the interest arbitration agreement in the 2018 CBA.  The parties agreed to the 2018 CBA, and Brent Electric does not challenge the validity of the interest arbitration provision itself.  The parties chose arbitration to resolve any dispute over the next CBA's terms including the dispute over the inclusion of permissive provisions.  But so long as the 2021 CBA does not contain an interest arbitration provision, the choice of arbitration and permissive provisions is finite—it ends in the 2021 CBA, and indeed the arbitrators here did not include an interest arbitration provision in the 2021 CBA.  The parties agreed to include permissive clauses, including interest arbitration, in the 2018 CBA.

Nov. 16 Order at 10–12 (footnotes omitted).

Further, Brent Electric continues to frame the issue as to whether arbitration of permissive subjects of bargaining is required by statute.  This framing is incorrect. Whether arbitration of permissive subjects is required by statute is not at issue in this case, rather the issue is whether Brent Electric contractually agreed to arbitration of permissive subjects.  Here, Brent Electric consented to the inclusion of

**4:21-cv-00246-CRK-CDL**

a permissive subject of bargaining.  Brent Electric repeatedly conflates the imposition

of permissive subjects of bargaining as a matter of statute with the imposition of

permissive subjects of bargaining as a matter of contract.  The Court emphasized this

distinction in its September 6 Order, stating:

> The obligation to negotiate various provisions in a labor agreement may
> stem from either statute or contract.  See generally N. L. R. B. v. Wooster
> Div. of Borg-Warner Corp., 356 U.S. 342 (1958).  Section 29 of the United
> States Code imposes a statutory duty on unions and employers to
> bargain in good faith.  See 29 U.S.C. §§ 158(a)(5), (b)(3).  The National
> Labor Relations Act, 29 U.S.C. §§ 151–169 ("NLRA"), established that
> an employer commits an unfair labor practice by refusing to bargain
> collectively with respect to wages, hours, and other terms and conditions
> of employment, or the negotiation of an agreement.   29 U.S.C. § 158(d).
>
> Parties are also free to contractually agree to negotiate permissive
> subjects.  See Borg-Warner, 356 U.S. 342, 349; see also Sheet Metal
> Workers' Int'l Ass'n, Loc. Union No. 2 v. McElroy's, Inc., 500 F.3d 1093,
> 1097 (10th Cir. 2007).  The Tenth Circuit recognized the distinction
> between statutory and contractual obligations in McElroy's.  McElroy, a
> mechanical contractor, sought to terminate its agreement with the Local
> Union on the contract's expiration date despite the existence of an
> interest arbitration clause.  Id. at 1095.  When McElroy refused to
> execute the established renewal contract it argued that the national
> labor policy allowed the termination of a pre-hire agreement without
> any obligation to negotiate for a renewal.  Id. at 1096.  The Tenth Circuit
> acknowledged the absence of a statutory obligation to renew the
> agreement but found that the interest arbitration to which McElroy had
> agreed created a contractual obligation to renew the contract.  Id. at
> 1097.  See also Columbus Printing Pressmen, 543 F.2d 1161, 1171.
> Thus, even absent a statutory duty to negotiate terms by virtue of the
> NLRA, parties will be required to negotiate where they have agreed to
> do so.  McElroy's, 500 F.3d at 1097.  Parties' freedom to contractually
> agree to negotiate non-mandatory subjects of negotiation gives rise to a
> concomitant freedom to employ an interest arbitration clause to agree
> to arbitrate such subjects.
>
> Brent Electric's argument that the arbitration award violates a well-
> defined public policy fails because national labor policy does not
> preclude parties from contractually agreeing to the arbitration of
> permissive subjects of negotiation, rather it precludes only agreement to

**4:21-cv-00246-CRK-CDL**

        self-perpetuating permissive clauses.   Brent Electric's analysis overlooks the character of the disputes in the cases it cites in support of this argument.

Sept. 6 Order at 16–18.

Thus, Brent Electric cannot show a likelihood of success on the merits.

Most importantly, Brent Electric does not point to any irreparable harm it would suffer.  The Court's September 6 judgment confirmed the arbitral award and required Brent Electric to preserve payroll records.  See Sept. 6 J. at 1.  Brent Electric argues that it would suffer irreparable harm because the arbitral award directs it to execute the 2021 CBA. Brent Elec. Mot. at ¶ 9; Brent Elec. Reply at 4–5.  Brent Electric argues that complying with the arbitral award would force it to adhere to an invalid and illegal contract, which "would make it impossible for the appellate court to then grant effective relief to Brent Electric because the damage to Brent Electric which had been done could not be unwound or remedied."  Brent Elec. Mot. at ¶ 9; Brent Elec. Reply at 4–5.

Brent Electric's argument is without merit.  A decision by the Court of Appeals reversing this Court's judgment could vacate the judgment and thus render void the previously executed 2021 CBA.  See 28 U.S.C. § 2106 ("any [] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances").

**4:21-cv-00246-CRK-CDL**

Consequently, a decision by the Court of Appeals can undo any harm done by the enforcement of this Court's judgment.

Brent Electric seems to assume that if it executes the contract as ordered by the Court, and the Court's order is reversed, that its execution will nonetheless be irrevocable. To support its theory, Brent Electric points to 29 U.S.C. § 158(d) ("Section 8(d)") of the National Labor Relations Act ("NLRA"). Brent Elec. Reply at 4. Section 8(d) provides in pertinent part that where there is a collective bargaining contract in effect, then "no party to such contract shall terminate or modify such contract[.]" 29 U.S.C. § 158(d). However, Section 185 of the NLRA grants the district court jurisdiction to review the validity of a collective bargaining agreement. 19 U.S.C. § 185(a); see also Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, (1957) (holding that Section 185(a) authorizes federal courts to enforce collective bargaining agreements). Thus, this Court could have declared the 2021 CBA invalid. Necessarily, if reversed by the Court of Appeals this Court could subsequently invalidate the 2021 CBA even though it had been executed by the parties pursuant to this Court's order. Moreover, 29 U.S.C. § 158(d) restricts the parties, not this Court or the Court of Appeals. To accept Brent Electric's reasoning would be to hamstring a core function of appellate court review. See 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States"); Marbury v. Madison, 5 U.S. 137, 175 (1803)

4:21-cv-00246-CRK-CDL

("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted").[3]

Further, Brent Electric points to no consequence of implementing the contract that could not be remedied by damages. Besides its mistaken assertion that signing the 2021 CBA would forfeit its right to challenge the agreement at the appellate level, Brent Electric claims "additional actual, significant harm" it would suffer are "the cost and burden of compliance with the agreement and award, or payment of back contributions with interest under the Employee Retirement Income Security Act of 1974." Brent Elec. Reply at 6. Yet Brent Electric does not provide any reasons at all for why these alleged harms could not be remedied by monetary damages. See id. Without more, such allegations are insufficient to warrant issuance of a stay. See

---

[3] The circumstances of this case are dissimilar from those cases where compliance with a judgment moots an appeal. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" so that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013); see, e.g., Schell v. OXY USA Inc., 814 F.3d 1107, 1116 (10th Cir. 2016) (rendering appeal moot where appealing party sold all interest in disputed leases to third party); Out of Line Sports, Inc. v. Rollerblade, Inc., 213 F.3d 500, 503 (10th Cir. 2000) (holding appeal of district court's order enforcing lien against the plaintiff moot because of the plaintiff's voluntary satisfaction of the judgment without motion to stay or explicit reservation of right to appeal); Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas, 491 F.3d 1143, 1150 (10th Cir. 2007) (dismissing appeal as moot where a school district sought declaratory judgment to affirm ability to refuse disclosure of student records from state agency only for state agency to withdraw request).

Here, Brent Electric moved the Court to stay enforcement of the arbitration award pending appeal, which has already been docketed with the Tenth Circuit Court of Appeals. The enforcement of the arbitration award is still live because the Court of Appeals could reverse this Court and hold the CIR decision invalid. Accordingly, Brent Electric has not relinquished its right to appellate remedy if the Court of Appeals deems it appropriate.

**4:21-cv-00246-CRK-CDL**

Sampson, 415 U.S. at 90 (requiring a movant to show irreparable harm that could

not be corrected by monetary damages); First W. Capital Mgmt. Co., 874 F.3d at 1141

(same); Salt Lake Trib. Pub. Co., LLC, 320 F.3d at 110 (holding that "irreparable

harm" is harm that cannot be undone).  Accordingly, Brent Electric has failed to

demonstrate irreparable harm, and its motion is denied.

With respect to the final factors, inquiry is unnecessary because Brent Electric

has failed to carry its burden demonstrating likely success on the merits and

irreparable harm.  See Nken, 556 U.S. at 435 ("Once an applicant satisfies the first

two factors, the traditional stay inquiry calls for assessing the harm to the opposing

party and weighing the public interest"); see also High Plains Harvest Church v.

Polis, 835 F. App'x 372, 374 (10th Cir. 2020) (affirming denial of preliminary

injunction to halt Covid-19 public gathering limitations because movants failed to

demonstrate likelihood of success on the merits).  Nonetheless, Brent Electric fails to

show the last two factors favor the issuance of a stay.  In its motion and reply brief,

Brent Electric asserts that the Union will not be harmed because it "will not be

compelled to act or refrain from any legal action" but rather it must only maintain

the status quo.  See Brent Elec. Mot. at ¶ 10; Brent Elec. Reply at 7.  The Union

counters that a stay will cause it harm by undermining public confidence in the CIR's

ability to issue binding arbitration decisions.  Union Resp. at 10.  After review of the

record, it is apparent that the third factor does not sway in either direction, as neither

party provides grounds that other interested parties will be substantially harmed in

relation to the instant proceedings.  Further, the public interest favors denial of a

**4:21-cv-00246-CRK-CDL**

stay. There is a public interest in enforcing valid CBAs through arbitration. See United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 585 (1960) ("The judiciary sits in [disputes over contracting out collective bargaining to arbitration] cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict"); Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 377 (1974) ("The federal policy favoring arbitration of labor disputes is firmly grounded in congressional command"); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) ("it has been established that where the [CBA] contract contains an arbitration clause, there is a presumption of arbitrability").[4]

---

[4] Section 2 of the Federal Arbitration Act states:
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.

**4:21-cv-00246-CRK-CDL**

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Brent Electric's Motion to Stay enforcement pending appeal,

<u>see</u> ECF No. 88, is denied.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:        January 5, 2024
               New York, New York

---

\* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.